UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

RUTH ANN CHEESMAN,

         Plaintiff,

  vs.

AMERITITLE,

         Defendant.

NO.  CV-07-3094-LRS

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Amerititle's Motion For Summary Judgment (Ct. Rec. 32), filed on May 25, 2010, and noted without oral argument for June 30, 2010.  Plaintiff is proceeding pro se.

Plaintiff has filed a Title VII Civil Rights Act claim against Defendant AmeriTitle relating to plaintiff's alleged discriminatory treatment at AmeriTitle during her nine and one-half weeks as a title assistant.  In addition to her claims of race, ethnicity, national origin or sex discrimination, plaintiff alleges retaliation or harassment, and state common law claims for invasion of privacy, defamation, intentional infliction of emotional distress and wrongful termination in violation of public policy.

**I.   SUMMARY OF FACTS**

The following facts are undisputed, except where otherwise indicated.  AmeriTitle is a private corporation that provides title,

ORDER - 1

escrow and marketing services in 31 counties with 43 offices in
Oregon, Washington and Idaho.  AmeriTitle is part of the Jeld-Wen,
Inc. family of companies, which includes door, window, millwork
manufacturing, assembly, and distribution facilities as well as
service entities such as AmeriTitle.

Plaintiff Ruth Ann Cheesman's race and ethnicity are Filipino and
Asian, and her national origin is the Philippines.  Ms. Cheesman
submitted an application for employment for a position with
AmeriTitle, dated July 16, 2006.  Ms. Cheesman had two separate
in-person interviews: one with Rick Osborne, General Manager, and one
with Marlene Wyatt, Title Manager.  During Ms. Cheesman's interview
with Mr. Osborne, he did not ask her about her race, but when Mr.
Osborne asked Ms. Cheesman to tell him about herself, she voluntarily
told him that she is a Filipino.  AmeriTitle hired Ms. Cheesman as a
title assistant on July 31, 2006.  Mr. Osborne notified Ms. Cheesman
of AmeriTitle's decision to hire her.  When Ms. Cheesman was hired,
Mr. Osborne and Ms. Wyatt knew she was Filipino and Asian.  Mr.
Osborne and Ms. Wyatt knew Ms. Cheesman was Asian when they hired her
because of the information she provided during the interview and the
color of her hair and skin.

Mr. Osborne was Ms. Cheesman's supervisor.  Mr. Osborne requested
that Ms. Cheesman read AmeriTitle's employee handbook and asked her to
sign it after she read it.  As stated in the Company's written
policies, Ms. Cheesman was an at-will employee who could quit for any
reason at any time and who could be terminated for any lawful reason
at any time.  During her employment, Ms. Cheesman signed and was

ORDER - 2

familiar with AmeriTitle's harassment policy and knew there was a phone number to call if she felt she was being harassed.

Ms. Cheesman's initial job duties included basic order entry, typing of title policies into a Windows-based software application, and customer service. Kathleen Osborne and Jackie Hovey, both senior title employees, trained Ms. Cheesman for the title assistant position, including training Ms. Cheesman on how to enter orders into the computer. Shortly after Ms. Cheesman began her employment, Ms. Wyatt noted that Ms. Cheesman was not meeting the office's minimum production goals because she was generating zero to two reports per day compared with the office's minimum department production goals of ten per day. Defendant states that Ms. Cheesman was making basic typographical errors on her order entry data creating potential problems with issuing timely and correct client information.

On August 21, 2006, Mr. Osborne and Ms. Wyatt conducted an internal audit and discovered that Ms. Cheesman was unable to perform the simplest computer functions. Ms. Wyatt had Ms. Hovey observe Ms. Cheesman's data entry process, who reported to AmeriTitle management that Ms. Cheesman lacked the basic understanding to highlight, copy and paste text and she struggled with her typing speed and made frequent typographical errors, despite Ms. Cheesman's assertions on her resume and employment application regarding her computer skills and typing speed of 45-60 words per minute.

Later on August 21, Ms. Wyatt met with Ms. Cheesman and co-worker Kathleen Burrough, who was also a title assistant, and warned both of them that they needed to increase their production on typing title

ORDER - 3

reports. During the meeting, Ms. Wyatt relieved both Ms. Cheesman and Ms. Burrough of nonessential job functions to allow them to concentrate solely on data entry.  In addition, Ms. Wyatt suggested that Ms. Cheesman and Ms. Burrough stay at work from 5 to 6 p.m. each evening so that they could get some extra assistance typing title reports until they felt comfortable working on their own. Ms. Cheesman and Ms. Burrough agreed to overtime training. The meeting ended with Ms. Wyatt reminding Ms. Cheesman to meet with outgoing employee Scott King for brief training on copying documents.

Toward the end of August, Ms. Wyatt gave Ms. Cheesman some typing training.  Ms. Wyatt was on vacation and out of the office from September 1 through September 15, 2006.  On September 6, Mr. Osborne asked Ms. Cheesman if she needed or wanted more one-on-one training. Ms. Cheesman assured Mr. Osborne she now felt comfortable working independently and had no need to train further with Ms. Burrough. (Osborne Decl. ¶ 6.) According to Ms. Cheesman she understood all of her job functions and she never went to Ms. Burrough with questions about how to do her job.  On September 14 at 9:30 a.m., Ms. Burrough met with Mr. Osborne and expressed concern with Ms. Cheesman's apparent inability to do her job.  Ms. Burrough had spent extensive time training Ms. Cheesman, but she reported to Mr. Osborne that Ms. Cheesman continued to interrupt Ms. Burrough with questions frequently. Ms. Burrough said that Ms. Cheesman's frequent requests for assistance were causing Ms. Burrough to fall behind as well.

On September 14 at 10:30 a.m., Mr. Osborne met with Ms. Cheesman and again warned her that producing one to two reports per day was

ORDER – 4

unacceptable. When Mr. Osborne asked Ms. Cheesman about her copier training with Mr. King, Ms. Cheesman said she had not trained with Mr. King. Mr. Osborne reminded Ms. Cheesman that Mr. King had only three days left as a full-time employee with AmeriTitle and that the two must meet before his departure. Mr. Osborne told Ms. Cheesman that she would need to be performing all of her basic job responsibilities up to AmeriTitle's expectations by September 20. On September 18, Mr. Osborne met with Ms. Wyatt and explained that Ms. Burrough had made some progress but that Ms. Cheesman still was not able to do the job. Mr. Osborne asked Ms. Wyatt to watch Ms. Cheesman to see if she felt Ms. Cheesman had made any progress since her last meeting with Ms. Cheesman.

On September 21, Mr. Osborne and Ms. Wyatt made the decision to terminate Ms. Cheesman's employment. On September 21, Mr. Osborne and Ms. Wyatt met with Ms. Cheesman and explained that despite AmeriTitle's training efforts, she was performing at an unacceptable level. Mr. Osborne told Ms. Cheesman that she was going to be fired and she could leave that day or she could work for two more weeks. Mr. Osborne told Ms. Cheesman that it was because she was not productive, not the person they were looking for, and that she doesn't know simple computer functions, such as highlighting and cutting and pasting. After Ms. Cheesman said that she could perform the job and showed them that she had performed all of the tasks that she had been given, they told her they would give her two weeks to prove herself and knock their socks off, and then the job would be hers.

On September 22, after Ms. Cheesman had been told that AmeriTitle

ORDER – 5

would terminate her employment, Ms. Cheesman complained to
AmeriTitle's corporate legal office and spoke with Jennifer Palmer, an
Employee Relations Manager. Ms. Cheesman expressed concern to Ms.
Palmer about questions that an AmeriTitle employee, Schiree Sullivan,
had asked Ms. Cheesman about her race and children.  According to Ms.
Cheesman, she was harassed when Ms. Sullivan, who did not manage or
supervise Ms. Cheesman, visited the title department and asked Ms.
Cheesman about her national origin; Ms. Cheesman told Ms. Sullivan she
was Filipino. Ms. Cheesman does not remember how many times she and
Ms. Sullivan spoke about Ms. Cheesman's race or national origin except
for once when Ms. Sullivan paged Ms. Cheesman via the intercom to go
to the next building and asked Ms. Cheesman specific questions.

   According to Ms. Cheesman, after she told Ms. Sullivan (who
worked in the escrow department) that she is Filipino, Ms. Sullivan
"made fun" of her with two other female AmeriTitle employees, Sally
Wright and Amanda Snyder. Ms. Cheesman says Ms. Sullivan made some
remark about "Fili fishing" to Ms. Cheesman, and the employees were
laughing.  Ms. Sullivan also asked Ms. Cheesman what she considers her
children's race/national origin to be. Ms. Cheesman says she told Ms.
Sullivan that her kids are Filipino and American. Ms. Cheesman says
she does not remember specifics of the rest of the conversation or the
date that it occurred, but remembers Ms. Sullivan asked a lot of
questions of her race and the race of her kids. The conversation with
ended when a customer arrived.  This incident is the only specific
discussion Ms. Cheesman remembers having with Ms. Sullivan and Ms.
Cheesman did not talk to Ms. Sullivan again after this incident.

ORDER – 6

Ms Cheesman reported this incident to Ms. Palmer.  Immediately afterwards, Ms. Palmer contacted Mr. Osborne and asked that he conduct an investigation into Ms. Cheesman's concerns.  Mr. Osborne then conducted an investigation into Ms. Cheesman's concerns.  As part of this investigation, on September 27 at 10:15 a.m., Mr. Osborne and Ms. Wyatt met with Ms. Cheesman. Ms. Cheesman described the alleged comments by Ms. Sullivan. Mr. Osborne told Ms. Cheesman to let him know if she had any further problems.  On September 27 at 10:45 a.m., Mr. Osborne met with Amanda Snyder, an alleged witness to the conversation between Ms. Cheesman and Ms. Sullivan.  Ms. Snyder reported to Mr. Osborne that, during the discussion, she never felt that Ms. Cheesman was feeling uncomfortable and that Ms. Cheesman had kept the conversation going with more and more information.

On September 27 at 11:05 a.m., Mr. Osborne met with Sally Wright, an alleged witness to the conversation between Ms. Cheesman and Ms. Sullivan.  Ms. Wright said she never felt that Ms. Cheesman was offended or that she ever tried to end the conversation.  On September 27 at 2:20 p.m., Mr. Osborne met with Ms. Sullivan.  Ms. Sullivan said she did not mean to offend Ms. Cheesman and that Ms. Cheesman never seemed uncomfortable or hurt in any way.  Ms. Sullivan reported that Ms. Cheesman kept the conversation going by adding more information that raised more questions.  Ms. Sullivan never thought she was offending Ms. Cheesman and that she certainly never intended to do so.

Following the investigation, Mr. Osborne and Ms. Palmer concluded that Ms. Sullivan did not engage in any discriminatory conduct or that she intended to cause Ms. Cheesman any harm. Instead, they concluded

ORDER – 7

that Ms. Sullivan was curious about Ms. Cheesman's background, but that she articulated that curiosity in an immature and awkward manner that was not consistent with the spirit of the Company's anti-harassment policy.  Mr. Osborne counseled Ms. Sullivan and advised her and Ms. Cheesman that conversations of this nature, no matter how innocuously intended, were inappropriate topics in the workplace.

Mr. Osborne met with Ms. Cheesman a second time, discussed the information he had found as described above, and encouraged her to come forward if she had any additional concerns.  Ms. Cheesman did not approach Mr. Osborne to raise any further issues.  Following Mr. Osborne's investigation, on October 2, Ms. Palmer called Ms. Cheesman to give her the results of the investigation.  Ms. Cheesman prevented Ms. Palmer from doing so and abruptly ended the conversation by stating that she wished no further communication with Ms. Palmer or the Company.  In Mr. Osborne's view, Ms. Cheesman's performance did not improve after September 21 and she continued to be unable to meet the minimum daily report goals.

On October 4, 2006, AmeriTitle terminated Ms. Cheesman's employment, because her performance did not improve and she continued to be unable to meet the minimum daily report goals.  Plaintiff, on the other hand, relates that her performance was not deficient.  Ms. Cheesman believed she had performed adequately throughout her employment so she is unable to identify any changes she made in her performance at the point that she was told she would be fired and she requested one final chance.

ORDER - 8

Ms. Cheesman asserts that when she worked at AmeriTitle she experienced discrimination and retaliation because of her race, ethnicity and national origin.  Except for Ms. Sullivan, who did not manage or supervise Ms. Cheesman, no other AmeriTitle employee ever made a comment to Ms. Cheesman about her race, ethnicity or national origin.  Ms. Cheesman says that Ms. Burrough treated her nicely at work and Ms. Cheesman has no reason to believe Ms. Burrough had any kind of racial bias or negative feelings towards her.  Ms. Burrough reported repeatedly to AmeriTitle management that Ms. Cheesman's work was inadequate and Mr. Cheesman's questions distracting.

Ms. Cheesman also testified that she believed that Ms. Burrough and an employee named Molly Kelly were treated more favorably than her.  Ms. Kelly was an escrow assistant who worked in a different department than Ms. Cheesman.  Ms. Cheesman does not know of any other title assistant who had the same record as she did in terms of report production.  According to Ms. Cheesman, Mr. Osborne was motivated by her race in terminating her employment because she believes his negative perception of her work performance that she made mistakes, was not a productive person, and did not know simple computer skills were not true.  Mr. Osborne never made a comment about her race, ethnicity or national origin.  Ms. Cheesman further contends that she was replaced by a white employee, but cannot identify who that allegedly was. She says that AmeriTitle's questioning of her ability shows that its management was racist.  AmeriTitle did not replace Ms. Cheesman with anyone.

Ms. Cheesman's sexual harassment complaint is based on her

ORDER - 9

allegedly witnessing of Mr. Osborne touching the bottom of his wife (and AmeriTitle employee) Ms. Osborne. Ms. Cheesman says he was looking in her direction when he touched his wife. Ms. Cheesman knew that Mr. and Ms. Osborne were a married couple. Ms. Cheesman never complained to any AmeriTitle manager about the issue, despite her knowledge of AmeriTitle's harassment and discrimination policy. Mr. Osborne never touched Ms. Cheesman and never made any verbal or written sexual remarks to Ms. Cheesman. Ms. Cheesman does not have any recollection of telling Ms. Palmer about any sexual harassment.

With respect to Ms. Cheesman's invasion of privacy claim, Ms. Cheesman says that during her job interview, Mr. Osborne asked her if she had children, what her husband does for a living, and where her husband worked. Ms. Cheesman says she told Ms. Osborne that her husband worked as a janitor at a hospital. Ms. Cheesman was not embarrassed about it, and Mr. Osborne subsequently offered her a job.

With regard to Ms. Cheesman's defamation claim, she asserts that she was defamed when her ability was questioned. Ms. Cheesman does not have any information from anyone outside AmeriTitle to suggest that Ms. Wyatt or Mr. Osborne has said anything negative or untruthful about her and Ms. Cheesman does not know if any statement by Mr. Osborne caused her to not get a job.

## II. BURDEN OF PROOF

The summary judgment motion before the Court are subject to the standard of Federal Rule of Civil Procedure 56, that there be no genuine issue of material fact. The motion is also subject to the shifting burdens of proof of *Celotex Corporation v. Catrett*, 477 U.S.

ORDER – 10

317, 106 S.Ct. 2549 (1986).  To succeed on summary judgment, plaintiff must prove each element essential to the claims upon which he seeks judgment by undisputed facts.  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986).

In contrast, a defendant faces a lighter burden.  Because the defendant does not bear the burden of proof at trial, defendant needs only point to the insufficiency of plaintiff's evidence to shift the burden to plaintiff to raise genuine issues of fact as to each claim by substantial evidence.  *T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex*, 106 S.Ct. at 2553; *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir.), *cert. denied*, 107 S.Ct. 435 (1986)). If plaintiff fails to raise a genuine issue of fact, then summary adjudication in favor of defendant will be granted.

When judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party.  *T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir.1991).

The standard for judging a motion for summary judgment is the same standard used to judge a motion for a directed verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505,

ORDER - 11

2512 (1986).

In meeting their burdens of proof, each party must come forward with admissible evidence. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publishing Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979). Plaintiff must ultimately persuade the Court in opposing summary judgment that she will have sufficient admissible evidence to justify going to trial.

A "party opposing a motion for summary judgment must file with its responsive memorandum a statement in the form prescribed in [LR 56.1](a), setting forth the specific facts which the opposing party asserts establishes a genuine issue of material fact precluding summary judgment." LR 56.1(b). Pursuant to paragraph (a) of LR 56.1, a "party filing a motion for summary judgment shall set forth separately from the memorandum of law, and in full, the specific facts relied upon in support of the motion." LR 56.1(a). "The specific facts shall be set forth in serial fashion and not in narrative form." *Id.* As to each fact, the statement shall refer to the specific portion of the record where the fact is found . . . ." *Id.* "In determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record set forth in [LR 56.1](b)." LR 56.1(d).

In the instant motion, contrary to LR 56.1(b), plaintiff did not file a separate statement setting forth the specific facts which she

ORDER - 12

asserts establish a genuine issue of material fact precluding summary judgment. Further, to the extent plaintiff asserts in her opposition memorandum that there are issues of material fact sufficient to preclude summary judgment, she failed to comply with LR 56.1(a) because she did not refer to the specific portions of the record where the facts are located.  For instance, plaintiff simply states "there is a disputed fact . . ." in her opposition response but fails to cite any evidence to support her assertions.  (Ct. Rec. 39 at 4-7.)  In paragraph 1 of section III, plaintiff asserts that "the Defendant fabricated evidences against Plaintiff," but fails to cite any evidence that supports her claim.  (*Id.* at 4.)  Without any evidentiary support, she makes the same claims about fabricated evidence in paragraphs 2, 4, and 6 of section III.  *Id.*  Finally, none of the other "facts" plaintiff asserts in section III refer to the specific portions of the record where the facts are found. Plaintiff's mere assertions, without evidentiary support, do not create genuine issues of material fact sufficient to preclude summary judgment. Under LR 56.1(d), the court may assume that the facts stated in defendant's Statement of Material Facts are not opposed and hence admitted.

Further, plaintiff's opposition memorandum does not address defendant's arguments that plaintiff failed to produce evidence sufficient to raise genuine issues of material fact on plaintiff's claims under the Fifth and Fourteenth Amendments to the U.S. Constitution, for invasion of privacy, and for intentional infliction of emotional distress. Defendant requests this Court to dismiss the constitutional claims based on plaintiff's failure to oppose

ORDER – 13

defendant's arguments with regard to those specific claims.

**III. DISCUSSION**

    **A. FEDERAL CLAIMS**

        **1.   Title VII Discrimination Claim**

    To establish a prima facie case of discrimination, a plaintiff must produce evidence showing that "(1) [s]he belongs to a protected class; (2) [s]he was performing her position in a satisfactory manner; (3) [s]he was subjected to an adverse employment action; and (4) similarly situated [persons outside her protected class] were treated more favorably." *Aragon v. Republic Silver Slate Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir. 2002) (citation omitted).

    Plaintiff, Ms. Cheesman, asserts that defendant employer, AmeriTitle, terminated plaintiff's at-will employment because of plaintiff's race.  Plaintiff also asserts that a co-worker, Ms. Sullivan, discriminated against plaintiff by inquiring about Ms. Cheesman's race/national origin and the race of her children.

    AmeriTitle does not dispute that plaintiff satisfies the first and third elements to establish a prima facie case. She is a member of a protected class and she was discharged. Ms. Cheesman, however, cannot produce any evidence to show that she was performing her position in a satisfactory manner or that similarly-situated persons outside her protected class were treated more favorably.

    Defendant argues that other than her bare assertions to the contrary, plaintiff has not produced any evidence that she was performing her position in a satisfactory manner.  AmeriTitle has produced uncontradicted evidence that Ms. Cheesman failed throughout

ORDER - 14

her employment to meet the minimum production goal of ten reports per day, and this is supported by her own notes. (Pl. Exs. 9, 10, 11, 12, 14; Osborne Decl. ¶¶ 3, 14.) Defendant concludes that Ms. Cheesman has not established a prima facie case that she performed her position in a satisfactory manner. *See Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667, 672 (9th Cir. 1988).

As to Ms. Cheesman's allegation that other employees were treated more favorably, she must show that employees allegedly receiving more favorable treatment are similarly situated.  Plaintiff "must demonstrate, at the least, that [she is] similarly situated to those employees in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). The only evidence offered by plaintiff to show that AmeriTitle treated a similarly situated employee more favorably is plaintiff's speculation that Ms. Burrough and an employee named Molly Kelly were treated more favorably.  Ms. Kelly is not similarly situated to plaintiff because she worked in a different department as a title assistant and has different duties than an escrow assistant. Further, Ms. Cheesman has not produced any evidence of any other title assistant who produced only 1-2 reports per day instead of the required 10 reports.

Defendant asserts that Ms. Cheesman cannot establish a prima facie case of discrimination.  AmeriTitle asserts that it terminated Ms. Cheesman's employment because her performance did not improve and she continued to be unable to meet the minimum daily report goal.  In response to her discharge, Ms. Cheesman testified that she believes Mr. Osborne was motivated by racial animus because she disagreed with

ORDER - 15

his assessment of her work performance that she made mistakes, was not productive, and did not have basic computer skills. Ms. Cheesman claims that AmeriTitle's questioning of her ability *shows* that her employers were racist but when the same actor is responsible for both the hiring and firing of a discrimination plaintiff, it creates a "strong inference" that the employer is not biased against the protected class to which the employee belongs. *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1096-98 (9th Cir. 2005).  Both Mr. Osborne and Ms. Wyatt made the decision to hire plaintiff and then, less than two months later, both agreed on the decision to terminate her employment due to underperformance.  Ms. Cheesman also claims that she believes she was replaced by a white employee, but she cannot identify the employee.

To the contrary, it is undisputed that AmeriTitle did not replace Ms. Cheesman with anyone.  The Court finds defendant's argument that Ms. Cheesman failed to establish a prima facie case of discrimination is convincing.  Ms. Cheesman's mere speculation of AmeriTitle's motivation and her subjective personal judgment of her performance fall far short of the "specific and substantial" evidence required to overcome an employer's motion for summary judgment. *See Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1413 (9th Cir. 1988) ("purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment"); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (concluding, despite the plaintiff's "claims she had been performing her job adequately and had received no feedback indicating otherwise,"

that "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact").  The Court finds that AmeriTitle's legitimate, nondiscriminatory reason for terminating plaintiff's employment is born out of the undisputed facts.  The Title VII claim is summarily dismissed and judgment granted in favor of AmeriTitle.

### 2.  42 U.S.C. § 1981 Claim

Plaintiff alleges race discrimination under 42 U.S.C. § 1981. Both Title VII and § 1981 require proof of intentional discrimination and the same standards apply to both claims. *Lowe v. Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985), *amended by*, 784 F.2d 1407 (1986). Defendant asserts that to establish a prima facie case of Title VII retaliation, a plaintiff must produce evidence that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008).  An employment action is adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted).

For the purpose of summary judgment, AmeriTitle concedes that plaintiff engaged in protected activity on September 22, 2009, when she raised concerns with Ms. Palmer about her conversation with Ms. Sullivan, one day after Mr. Osborne and Ms. Wyatt told Ms. Cheesman that her employment would be terminated. AmeriTitle also concedes the termination of plaintiff's employment was an adverse employment

action. Defendant argues that plaintiff, however, cannot produce any evidence of a causal link between her protected activity and termination or that AmeriTitle's reasons for her termination are a pretext for discrimination.

Defendant argues that courts have repeatedly made clear that the prohibition against retaliation does not immunize nonproductive or inappropriate conduct at work. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatsoever of causality."). Although Mr. Osborne and Ms. Wyatt gave Ms. Cheesman the chance to "knock [their] socks off," Ms. Cheesman does not identify any aspect of her performance that she changed and, thus, her employment was terminated as planned.  Plaintiff has not produced any evidence[1] of pretext and for the foregoing reasons, plaintiff's retaliation claim is dismissed and summary judgment granted in favor of defendant.

### 3.    Fifth and Fourteenth Amendment Rights

Plaintiff alleges in her complaint that AmeriTitle violated her Fifth and Fourteenth Amendment rights in that she was deprived of her "rights and privileges as secured by the Constitution and laws of the United States as a result of an intentional discrimination act of the defendant and its employees." (Complaint, ¶ 13(a).) Plaintiff also

---

[1] Plaintiff has not supplied any supporting affidavit, deposition, report or other documentation to support any of her assertions and conclusory statements.

ORDER – 18

alleges that she was "able and available, and qualified for the job or position held that is full, consistent and complete they provide to white persons." (Complaint, ¶ 13b.)

Defendant argues that the Fifth Amendment claim fails because the Fifth Amendment to the U.S. Constitution only "prohibits the federal government from depriving persons of due process." *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005); *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). The Court finds that this claim fails because the Fifth Amendment's due process clause only applies to the federal government.

Defendant argues that plaintiff's Fourteenth Amendment claim fails because the Amendment protects against state government infringements on the privileges and immunities of citizens, and requires due process and equal protection. A claim under this Amendment requires "state action." *Gorenc v. Salt River Project Agricultural Improv. & Power Dist.*, 869 F.2d 503, 506 (9th Cir. 1989), *cert. denied*, 493 U.S. 899 (1989).  The Court finds that this claim fails because plaintiff has not made any allegations and has not produced any evidence that any state government was involved in any of AmeriTitle's alleged conduct.  The Court finds summary judgment in favor of defendant and plaintiff's Fifth and Fourteenth Amendment claims are hereby dismissed.

### 4.    Title VII—Hostile Work Environment Claim

Ms. Cheesman asserts that she witnessed Mr. Osborne touch the bottom of another AmeriTitle employee, who was married to Mr. Osborne, when Mr. Osborne was looking at Ms. Cheesman. Plaintiff also suggests

ORDER – 19

that she was subjected to a hostile work environment because of her race, ethnicity and national origin.

Defendant argues that this conduct falls short of conduct that a reasonable person would find hostile or abusive and there is no evidence that it interfered with the conditions of Ms. Cheesman's employment.  Defendant further states that Ms. Cheesman knew that Mr. and Ms. Osborne were a married couple; she never objected; and did not call the corporate office to protest, despite reading and signing the corporate harassment policy and procedures in the employee handbook. Furthermore, defendant notes, Mr. Osborne never touched Ms. Cheesman and never made any verbal or written sexual remarks to Ms. Cheesman.

Defendant denies that it created a hostile work environment based on race or ethnicity.  Defendant argues that the only conduct to which plaintiff complained was the conversation Ms. Cheesman had with Ms. Sullivan regarding her race and the race of her children.  Similar to plaintiff's sexual harassment claim, such conduct is not severe or pervasive to a reasonable person, and not sufficient to survive summary judgment.

The Court agrees with defendant that Ms. Cheesman has not produced any evidence supporting her hostile work environment claim. "Conduct which unreasonably interferes with work performance can alter a condition of employment and create an abusive working environment." *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991). The "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S.

ORDER — 20

75, 81 (1998).  The Court finds that a reasonable person in plaintiff's position would not be offended as plaintiff purports to have been.

Plaintiff asserts that AmeriTitle's "hostility continue harassing Plaintiff by keep on talking without action but termination and retaliation against Plaintiff."  Plaintiff provides no evidence to support her assertions of a hostile work environment.  For the foregoing reasons, the court finds in favor of defendant and plaintiff's Title VII hostile work environment claim is dismissed. Therefore, the Court concludes that all of plaintiff's federal claims are dismissed.

**B. State Law Claims**

  **1.    Invasion of Privacy Claim**

Plaintiff testified that her right to privacy was invaded by Mr. Osborne when he asked if plaintiff had children, what her husband did for a living, and where her husband worked.  Plaintiff also contends that Ms. Sullivan invaded her privacy by asking questions about Ms. Cheesman's race and national origin and the race of her children.

Defendant explains that Washington has adopted the Restatement (Second) of Torts § 652(D) (1977) general rule for invasion of privacy, which provides:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

*Reid v. Pierce County*, 136 Wn.2d 195, 205, 961 P.2d 333 (1998)

ORDER – 21

(quoting Restatement (Second) of Torts § 652D (1977)).

Defendant argues that there is no evidence that anyone from AmeriTitle communicated any private information about Ms. Cheesman to any third party or the public at large. Rather, Mr. Osborne and Ms. Sullivan merely asked questions and Ms. Cheesman says she provided the information. Asking about Ms. Cheesman's spouse, children, and work history is not highly offensive to a reasonable person because people regularly ask new acquaintances similar questions. The Court finds that the undisputed facts in the record do not support Ms. Cheesman's claim for invasion of privacy. Therefore, the Court finds in favor of defendant and dismisses this claim.

### 2. Defamation Claim

Ms. Cheesman testified that Mr. Osborne and Ms. Wyatt defamed her by questioning her ability and job performance. Defendant argues that these statements are not statements of fact but rather expressions of opinion about Ms. Cheesman's work ability. Thus, they cannot be proved false and are not actionable.

The Court agrees with defendant. Defamation requires that a plaintiff prove falsity, an unprivileged communication, fault, and damages. *Mohr v. Grant*, 153 Wn.2d 812, 822 (2005). The Court finds that the allegedly defamatory statements made by Mr. Osborne and Ms. Wyatt were made as part of their evaluation of Ms. Cheesman's work and, thus, were privileged communications. Further, defamation is concerned with compensating the injured party for damage to reputation. *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 471, 722 P.2d 1295 (1986).

ORDER – 22

Plaintiff has not produced any evidence of any false, non-privileged statements or any damages caused by the allegedly defamatory statements.  Plaintiff has not shown that the allegedly defamatory statements were made to anyone outside of AmeriTitle.  Ms. Cheesman simply has not produced any evidence raising a genuine issue of material fact regarding this claim.  Thus, the Court is unable to find that plaintiff's reputation could have been damaged under the facts of this case. Therefore, the Court finds in favor of defendant and the defamation claim is dismissed.

### 3.   Outrage Claim

Plaintiff states in her First Amended Complaint that "[t]he Defendants [sic] conduct was outrageous and an abuse of the position of Defendants.  Said conduct was intended to cause severe emotional distress, or done in conscious disregard of the probability of causing such distress."  (Ct. Rec. 14 at 6.)

Defendant argues that the conduct alleged by Ms. Cheesman cannot be characterized as outrageous, extreme, beyond all possible of decency, atrocious or utterly intolerable in a civilized community. Defendant next argues, citing *Haubry v. Snow*,[2] that plaintiff's claim must be dismissed because an employee may not recover damages for emotional distress in an employment context unless "the factual basis for the claim is distinct from the factual basis for the discrimination claim." 106 Wn.App. at 680.  Defendant asserts that the

---

[2] *Haubry v. Snow*, 106 Wn. App. 666, 680, 31 P.3d 1186 (2001) (holding that the plaintiff's intentional and negligent infliction of emotional distress claims failed because the factual basis for them were the same as the factual basis for the plaintiff's sexual harassment and discrimination claims).

ORDER – 23

factual basis for Ms. Cheesman's emotional distress claim is the same as the factual basis which supports her discrimination and retaliation claims and therefore must fail.

To prevail on a claim of outrage or intentional infliction of emotional distress, a plaintiff must prove three elements: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989). The first element requires proof that the conduct was "*so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*" *Id.* (italics in original).

The first element of the test goes to the jury only <u>after</u> the court "determine[s] if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Id*. "[M]ere insults and indignities, such as causing embarrassment or humiliation, will not support imposition of liability on a claim of outrage." *Id*. The Court finds that no reasonable mind could find that the allegedly outrageous conduct was sufficiently extreme to give rise to liability. For the foregoing reasons, the Court finds in favor of defendant and plaintiff's outrage claim is dismissed.

### 4.    Wrongful Termination Claim

Plaintiff claims wrongful termination based on her subjective belief that she was fired in retaliation for her complaints to Mr. Osborne.  Defendant asserts that Ms. Cheesman's wrongful termination

claim fails for the same reasons that her Title VII retaliation claim failed.  Defendant states it is undisputed that Ms. Cheesman did not complain until after Mr. Osborne and Ms. Wyatt had informed her of their decision to terminate her employment.  Although Ms. Cheesman was given the chance she requested to "knock the socks off" of Mr. Osborne and Ms. Wyatt, her performance did not improve and, thus, the discharge was carried out as planned.

Under Washington common law, at-will employees can quit or be fired for any reason. *Roberts v. Atlantic Richfield Co.*, 88 Wn.2d 887, 891, 568 P.2d 764 (1977). Washington law recognizes that exceptions to the at-will doctrine have been allowed, such as "where employees are fired for exercising a legal right or privilege." *Dicomes*, 113 Wn.2d at 618.

The Court finds that there are no exceptions applicable to this case and that plaintiff was terminated legally as a result of her performance deficiencies.  Ms. Cheesman has not produced evidence raising any genuine issue of material fact regarding her claim.  For the foregoing reasons, the Court finds in favor of the defendant and plaintiff's wrongful termination claim is dismissed.

**IV.  CONCLUSION**

Defendant has proven the insufficiency of the plaintiff's evidence.  Plaintiff has failed to raise any genuine issues of material fact and has failed to prove the elements essential to claims upon which she seeks summary judgment.  Accordingly,

**IT IS ORDERED** that:

1.  Defendant's Motion For Summary Judgment, **Ct. Rec. 32,** filed

ORDER – 25

May 25 2010, is **GRANTED.**  Plaintiff's claims are dismissed in their entirety and with prejudice.

    2.  Defendant's Motion for Extension of Time to File, **Ct. Rec. 41**, filed July 19, 2010, is **DENIED as MOOT.**

    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward a copy to plaintiff, enter judgment consistent with this order, and **CLOSE FILE.**

    DATED this 22nd day of July, 2010.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 26